IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                             **Plaintiff**,

v.

FRANK CASTRO (01),

                             **Defendant**.

Case No. 23-20032-01-DDC

## MEMORANDUM AND ORDER

Before the court is the government's 404(b) Notice and Motion to Admit Res Gestae Evidence, Evidence Pursuant to Rule 414 (Doc. 51). The government seeks a preliminary admissibility ruling on two exhibits it wishes to admit at trial against defendant Frank Castro. The court held a hearing on the motion on May 1, 2025. This Order denies in part the government's motion (Doc. 51) and defers ruling in part.

## I.      Background

A grand jury indicted Mr. Castro in a Second Superseding Indictment on one charge of receiving child pornography, violating 18 U.S.C. § 2252(a)(2), and one charge of possessing child pornography, violating 18 U.S.C. § 2252(a)(4)(B). Doc. 45 at 1–2. At the hearing, the government explained its intent to introduce eight exhibits against Mr. Castro at trial—four exhibits from a 2019 investigation of Mr. Castro and four exhibits from the 2021 investigation yielding the current charges against him. The government's supplemental brief winnowed the scope of the government's request, clarifying that the government now seeks rulings on just two

exhibits from the 2019 investigation.  Doc. 60 at 2–3.  Those two exhibits are the subject of this Order.[1]

For context, the court briefly recites the government's allegations about its investigation of Mr. Castro.[2]

The government alleges that it first investigated Mr. Castro in 2019, after receiving a tip from an anonymous source.  Doc. 51 at 2.  The tip alleged that Mr. Castro had bragged on Grindr—a mobile application and dating service, *id.* at 2 n.2—that he had molested minors.  *Id.* at 2–3.  After receiving that tip, an FBI agent—acting in an undercover capacity—texted Mr. Castro.  *Id.* at 3–8.  In one part of the text exchange with the undercover agent, Mr. Castro stated again that he previously had sexual contact with minors.  *Id.* at 6.

Several days after this text exchange, two government agents went to Mr. Castro's residence.  *Id.* at 8.  Mr. Castro—though reluctant at times—consented to an interview with the agents.  They interviewed Mr. Castro for a little over an hour.  *Id.*  During this interview, Mr. Castro admitted that earlier, he had received—and then deleted—child pornography.  *Id.* at 10. The government wishes to introduce the audio recording and transcript of this interview—which the government has numbered as trial Exhibits 5 and 8.[3]  The government took no more action following this 2019 investigation.  Doc. 31 at 3.

---

[1]     At the motion hearing, the parties informed the court that they agree about the admissible portions of three of the four exhibits from the 2021 investigation.  Mr. Castro stated his intent to object to the final exhibit from the 2021 investigation on Rule 403 grounds.  Because Mr. Castro hasn't yet made that Rule 403 objection, the court postpones that discussion for another day.

[2]     The court takes no position whether the government can muster proof of these facts at trial.  Still, the court explains these allegations to furnish context to the preliminary determinations the court expresses in this Order.

[3]     The government's supplemental briefing explains that the government no longer seeks admission of Exhibits 6 and 7, which contain the Grindr chat and the transcript of undercover officer's text messages.  Doc. 60 at 2.

About two years later, Mr. Castro reappeared on the FBI's radar. Doc. 51 at 11. FBI

Kansas City received a tip from Milwaukee law enforcement officers, indicating that Mr. Castro

had received child pornography from a man named Antonio Galicia. *Id.* at 11–14. Based on that

tip, FBI personnel again went to Mr. Castro's home and interviewed him a second time. *Id.* at

14–19. Based on that interview and the surrounding investigation, a grand jury indicted Mr.

Castro. Doc. 45 at 1–2.

Now the government has filed its Motion to Admit Res Gestae Evidence (Doc. 51).

Defendant responded. Doc. 57. And the government replied. Doc. 58. The court held a hearing

on the motion, and then the government filed a supplemental brief. Doc. 59; Doc. 60. The court

is now prepared to rule.

## II.    Analysis

The government argues that evidence of the FBI's 2019 interview with Mr. Castro—as

reported in Exhibits 5 and 8—is admissible for three reasons. *One*, it's *res gestae*, evidence

intrinsic to the charged crimes. *Two*, Rule 414 allows its admission. And *three*, it's Rule 404(b)

evidence, offered for a permissible, non-propensity purpose. The court addresses all three

arguments, in turn, below.[4]

---

[4]    The court's rulings in this Order are preliminary ones, made based on the current record. As the
parties acknowledged at the motion hearing, trials are dynamic enterprises. Mr. Castro's trial strategy—
including, for instance, arguments made in his opening statement—could affect the court's rulings. *See,
e.g.*, *United States v. Magallanez*, 408 F.3d 672, 678 (10th Cir. 2005) (affirming admissibility of "agents'
testimony regarding the historical background of the investigation" after defendant "open[ed] the door"
with arguments in opening statement); *Edens v. Netherlands Ins. Co.*, 834 F.3d 1116, 1131 (10th Cir.
2016) (explaining that motion-in-limine ruling is "'no more than a preliminary, or advisory, opinion'"
(quoting *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994))).

A.     **Res Gestae**

Evidence from the 2019 investigation isn't admissible as intrinsic evidence.[5]  "An

uncharged act is admissible as *res gestae*—intrinsic evidence not subject to Federal Rule of

Evidence 404(b)—if 'it was inextricably intertwined with the charged crime such that a witness's

testimony would have been confusing and incomplete without mention of the prior act.'"  *United*

*States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010) (quoting *United States v. Johnson*, 42 F.3d

1312, 1316 (10th Cir. 1994)).  Our Circuit has "also described this kind of evidence as 'part and

parcel of the proof of the offense charged in the indictment.'"  *United States v. Piette*, 45 F.4th

1142, 1155 (10th Cir. 2022) (ellipsis omitted) (quoting *United States v. Kimball*, 73 F.3d 269,

272 (10th Cir. 1995)).  "Generally speaking, intrinsic evidence is directly connected to the

factual circumstances of the crime and provides contextual or background information to the

jury."  *United States v. Gallegos*, 111 F.4th 1068, 1092 (10th Cir. 2024) (quotation cleaned up).

Here, evidence from the 2019 investigation isn't intrinsic to the crimes charged.  The

government—at least as far as the record currently before the court reflects—ended its

investigation of Mr. Castro after the 2019 interview.  To that end, background information from

the 2019 interview is "entirely unnecessary to explain the context" of the 2021 investigation

leading to the current charges.  *United States v. Hinson*, 585 F.3d 1328, 1337 (10th Cir. 2009).

Instead, the "reason the [government] focused their investigation" on Mr. Castro in 2021 "was

---

[5]     Based on the government's supplemental brief, it's not altogether clear whether the government
seeks to admit the 2019 interviews as intrinsic evidence or not.  *Compare* Doc. 60 at 2–3 ("[T]he only
unresolved evidentiary matter left for the Court's consideration on this issue is the extent to which the
2019 interview (Government's Exhibits 5 and 8) meets the threshold admissibility requirements under
Rule 414 and/or Rule 404(b), and if the evidence survives the 403 balancing test for each Rule."), *with id.*
at 12 ("[T]he Government requests the court find the proffered evidence admissible pursuant to *res*
*gestae*, Rule 414, and/or Rule 404(b).").  Out of an abundance of caution, the court considers the
argument the government advanced in its opening brief—that evidence from the 2019 investigation is
admissible as intrinsic evidence.  *See* Doc. 51 at 24–31.

perfectly clear[.]" *Id.* The Milwaukee Police Department—while investigating Mr. Galicia—came across social media conversations between Mr. Castro and Mr. Galicia. There, the two men "discussed perpetrating sexual abuse of children" and Mr. Galicia sent Mr. Castro child pornography. Doc. 26 at 3. FBI Milwaukee then notified FBI Kansas City after it determined that Mr. Castro lived in the Kansas City area. *Id.* at 4. So, contrary to the government's assertion, evidence from the 2019 investigation isn't "'necessary for a full presentation of the case.'" *United States v. Shirley*, 214 F. Supp. 3d 1124, 1153 (D.N.M. 2016) (quoting *Kimball*, 73 F.3d at 272). Instead, the government "can tell a robust story" about its investigation "without mentioning" the 2019 backdrop. *Id.*

The government argued at the motion hearing that the 2019 and 2021 interviews were "strikingly similar." And the government's brief argues that Mr. "Castro's reoccurring sexual interest in minors, pattern of trafficking child pornography, and pattern of deleting content in an attempt to conceal his illegal behavior" all support its position that this evidence is *res gestae*. Doc. 51 at 24. Not so. Similarities between past and alleged conduct don't prove that the 2019 interview or the 2019 investigation were "part and parcel" of the 2021 investigation and interview. *Piette*, 45 F.4th at 1155 (internal quotation marks and citation omitted). That is, no matter how similar Mr. Castro's past conduct was to his current charged conduct, similarity doesn't prove that past conduct was intrinsic to the crimes charged.

What's more, more than 18 months passed between the 2019 interview and the initial conduct charged in the Second Superseding Indictment. *Compare* Doc. 51 at 8 (describing interview with Mr. Castro on January 24, 2019), *with* Doc. 45 at 1 (charging receipt of child pornography on September 12, 2020). The temporal remoteness between the initial and subsequent investigations also suggests that the 2019 investigation isn't intrinsic evidence. *See*

*United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015) ("Proper background evidence has a causal, temporal or spatial connection with the charged offense." (internal quotation marks and citation omitted)); *Piette*, 45 F.4th at 1157 ("The government recognized at trial that . . . testimony about [defendant] molesting the Springfield girl was inadmissible as res gestae because it preceded [defendant's] time with [the victim]."); *cf. United States v. Parker*, 553 F.3d 1309, 1315–16 (10th Cir. 2009) (concluding acts "within the charged conspiracy time-frame are intrinsic" but analyzing acts outside that timeframe under Rule 404(b)).

In short, the court denies the government's request to admit evidence from the 2019 investigation as *res gestae*. Evidence from the 2019 investigation isn't "inextricably intertwined with the charged conflict" or "part and parcel of the proof of the offense charged in the indictment." *Piette*, 45 F.4th at 1155 (quotation cleaned up). So, that evidence isn't "directly connected" to the charged conduct and thus doesn't qualify as intrinsic evidence. *Gallegos*, 111 F.4th at 1092. Because evidence from the 2019 investigation isn't intrinsic to the charged crimes, it isn't wholesale admissible. Still, Rule 414 and Rule 404(b) could support admitting parts of the 2019 interview. The court takes up those rules and applies them to the evidence here, next.

### B.    414 Evidence

For now, the court will defer ruling on the admissibility of evidence under Rule 414 (and 404(b)) until the parties provide a more line-by-line presentation of the disputed content. Still, the court offers this overview of the Rule, hoping it will give the parties some guidance as this issue defines itself.

Federal Rule of Evidence 414 provides: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant."

6

Fed. R. Evid. 414(a).  This rule functions as an exception "to the general rule of 404(a) prohibiting admission of evidence to show a defendant's propensity to commit bad acts."  *United States v. Perrault*, 995 F.3d 748, 765 (10th Cir. 2021).  "Although Rules 413 and 414 establish exceptions to the general rule against propensity evidence, they do not authorize its indiscriminate admission."  *United States v. Harjo*, 122 F.4th 1240, 1249 (10th Cir. 2024).

The government "must overcome 'several hurdles'" before it "may admit . . . Rule 414 evidence[.]"  *Perrault*, 995 F.3d at 765 (quoting *United States v. Guardia*, 135 F.3d 1326, 1332 (10th Cir. 1998)).  "Evidence of a prior child molestation may qualify for admission if:  (1) the defendant is accused of a crime involving sexual assault or child molestation, (2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation, and (3) the evidence is relevant."  *Harjo*, 122 F.4th at 1249. "If those threshold requirements are satisfied, the district court proceeds with its analysis under Rule 403."  *Id.*

"When applying Rule 403 to Rule 414 evidence, the district court must first 'make a preliminary finding that a jury could reasonably find that the "other act" occurred by a preponderance of the evidence.'"  *Id.* at 1249 (10th Cir. 2024) (quoting *United States v. Benally*, 500 F.3d 1085, 1090 (10th Cir. 2007)).  Assuming the government can satisfy this threshold standard, the court employs "a specialized version of the standard Rule 403 balancing analysis, which assesses whether the proffered evidence's probative value is substantially outweighed by the danger of unfair prejudice."  *Id.* (internal quotation marks and citation omitted).  To "consider the probative value of the proffered evidence[,]" the courts uses "the *Enjady* factors: '1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the

government can avail itself of any less prejudicial evidence.'" *Id.* at 1250 (emphasis omitted) (quoting *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998)). On the other side of the ledger, the

> court must weigh those four factors against three other factors meant to capture the prejudicial danger: "1) how likely is it such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct."

*Id.* (quotation cleaned up) (quoting *Enjady*, 134 F.3d at 1433). The court now applies that legal framework to the evidence that the government wishes to admit against Mr. Castro.

### 1. Threshold Requirements

The government's proffer here likely satisfies the threshold requirements for Rule 414 evidence. Recall that the evidence must satisfy three threshold requirements—"'(1) the defendant is accused of a crime involving sexual assault or child molestation, (2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation, and (3) the evidence is relevant.'" *Harjo*, 122 F.4th at 1249 (quoting *Benally*, 500 F.3d at 1090). The Second Superseding Indictment charges Mr. Castro with receiving and possessing child pornography. Doc. 45 at 1–2. Both crimes qualify as "child molestation" for the purposes of Rule 414. Fed. R. Evid. 414(d)(2)(B) (explaining that "child molestation" includes "any conduct prohibited by 18 U.S.C. chapter 110"—a chapter that includes 18 U.S.C. § 2252). The government contends that Mr. Castro's 2019 interview shows that he received and possessed child pornography. Doc. 60 at 11. If the government can adduce sufficient proof of those allegations, those crimes—possession and receipt of child

pornography—satisfy the second threshold requirement.[6]  *See* Fed. R. Evid. 414 (d)(2)(B).

Finally, the evidence of Mr. Castro's past conduct is almost certainly relevant because it suggests

that he has a propensity to commit child-molestation offenses.  *See, e.g., Guardia*, 135 F.3d at

1328 ("A defendant with a propensity to commit acts similar to the charged crime is more likely

to have committed the charged crime than another.  Evidence of a such a propensity is therefore

relevant."); *Michelson v. United States*, 335 U.S. 469, 476 (1948) (acknowledging the "admitted

probative value" of propensity evidence); *see also* Doc. 60 at 2 ("The parties agree that

defendant's prior uncharged receipt and/or possession of child pornography is relevant in that it

demonstrates a propensity to commit the charged offenses and [is] relevant to show a sexual

interest in children.").  In sum, the government likely can shoulder its burden to establish all

three threshold requirements for Rule 414 evidence.

### 2.  Preponderance Finding

Before weighing the probative and prejudicial effect of the proposed evidence, the court

must "make a preliminary finding that a jury could reasonably find that the 'other act' occurred

by a preponderance of the evidence."  *Harjo*, 122 F.4th at 1249 (quotation cleaned up).

As an initial matter, it's not clear which prior "child molestation" the government

contends Mr. Castro committed.  Fed. R. Evid. 414.  The government's supplemental brief

contends that Mr. Castro admitted—in the 2019 interview—"that he 1) received child

pornography; 2) possessed child pornography; 3) has a clear sexual interest in children; 4) used

various online platforms to discuss his sexual interest in children; and 5) deleted child

pornography[.]"  Doc. 60 at 11.  Throw out the last three of these allegations.  None of them

---

[6]     As discussed further below, the court can't rule yet whether the government has adduced
sufficient evidence for a jury to find by a preponderance that Mr. Castro violated a provision of 18 U.S.C.
§ 2252.

qualify as "child molestation" under Rule 414's definition.  *See* Fed. R. Evid. 414(d).  That

elimination leaves the government's allegation that Mr. Castro received and possessed child

pornography.  Indeed, the federal code criminalizes both of those acts, 18 U.S.C. § 2252, and

Rule 414 sweeps both crimes within its definition of "child molestation."  Fed. R. Evid. 414(d).

But—significantly—the pertinent statute has a "knowing" mens rea requirement.  18 U.S.C.

§ 2252.

The government hasn't convinced the court—at least not yet—that it can carry its burden

to adduce sufficient evidence for the jury to find by a preponderance of the evidence that Mr.

Castro *knowingly* possessed or received child pornography in 2019.  Two of our Circuit's cases

give the court pause.  In *Enjady*, the trial court refused defendant's request for a hearing

"presumably to require the judge to find by a preponderance of the evidence that the prior rape

occurred."  134 F.3d at 1434.  The district judge explained that the credibility of the witness—

the one who was testifying about the alleged prior rape—was a question for the jury.  *Id.*  Our

Circuit affirmed but cautioned that it could "easily conceive of situations in which such a ruling

by the court would be an abuse of discretion."  *Id.*  Importantly, in *Enjady*, other evidence—such

as a contemporaneous police report and the investigating officer's testimony—corroborated the

allegations about the prior rape.  *Id.*

Our Circuit held similarly in *Harjo*.  There, the Circuit found that a witness's live

testimony—coupled with "contemporaneous corroborating documentary evidence"—sufficed to

support the district court's conclusion that "a reasonably jury could find the prior acts occurred

by a preponderance of the evidence."  *Harjo*, 122 F.4th at 1251.  The panel noted that trial

testimony—something missing here—was important to its conclusion.  *Id.* at 1252 n.14 ("[T]he

witnesses agreed to testify live to the contents of the documentary evidence—meaning they were

offering sworn testimony to support its veracity.  The willingness to testify to the documentary

evidence supports the district court's conclusion that a jury could find the prior acts occurred by

a preponderance of the evidence.").  But even with a live witness and corroborating evidence,

our Circuit still explained that "[a]nother judge might have struck a different balance in a similar

circumstances."  *Id.* at 1254.  And our Circuit declined to adopt a categorical rule that "a

witness's trial testimony *alone* can satisfy *Enjady*'s threshold preponderance inquiry."  *Id.* at

1251 n.11 (emphasis in original).

The court won't rule yet whether the government has carried its burden to furnish

evidence sufficient for a jury to find "the other act occurred by a preponderance of the evidence."

*Harjo*, 122 F.4th at 1250 (quotation cleaned up).  But the court notes its hesitation.  True, in his

2019 interview with the FBI, Mr. Castro acknowledged that he had received child pornography.

Mot. Hr'g Ex. 8 at 40–43.  And Mr. Castro again confirmed in the 2021 interrogation that he had

"seen" and received child pornography.  Doc. 51-2 at 52–53.  But Mr. Castro didn't admit—in

either interview—that he received or possessed the illegal content knowingly.  *See United States

v. Goldesberry*, 128 F.4th 1183, 1195 (10th Cir. 2025) ("[T]he term 'knowingly' means an act

was done voluntarily and intentionally, and not because of mistake or accident." (quotation

cleaned up)).  Plus, Mr. Castro's statements in the FBI interviews are frequently jumbled and

incoherent.  What's more, unlike in *Enjady* and *Harjo*, no other evidence—at least not on the

record currently before the court—corroborates the government's assertions about Mr. Castro's

earlier illegal conduct.  And unlike *Enjady* and *Harjo*, the government hasn't indicated it will

offer any trial testimony to corroborate its allegation that Mr. Castro knowingly received and

possessed child pornography in 2019.

It's conceivable the government can shoulder its burden on this issue.  But the court

believes it must hear more from the parties—with reference to specific record evidence—before

determining what parts of the 2019 interview, if any, qualify as admissible under Rule 414.  So

for now, the court will defer the Rule 403 balancing with the *Enjady* factors unless the

government satisfies its preponderance-of-the-evidence burden.

### C.    404(b) Evidence

Finally, the court turns to the government's argument that Exhibits 5 and 8 are admissible

under Rule 404(b).  The government identifies the crux of its argument this way:

> [Mr. Castro's] 2019 admissions that he 1) received child pornography; 2) possessed
> child pornography; 3) has a clear sexual interest in children; 4) used various online
> platforms to discuss his sexual interest in children; and 5) deleted child
> pornography are each relevant to show his knowledge, intent, and motive -- that he
> is sexually interested in children and has an interest in purposefully and knowingly
> obtaining child pornography.

Doc. 60 at 11.  The court addresses a procedural issue raised at the motion hearing before

outlining the substantive law governing admission of evidence under Rule 404(b), below.

### 1.  Procedural Issue

At the motion hearing, the court mused about the procedural sequence required to admit

404(b) evidence.  That is, may the government introduce 404(b) evidence for an admissible

purpose—"such as proving motive, opportunity, intent, preparation, plan, knowledge, identity,

absence of mistake, or lack of accident[,]" Fed. R. Evid. 404(b)(2)—*before* the defendant

specifically has contested the relevant purpose?  Our Circuit has answered that question clearly:

"Faced with a plea of not guilty, the government need not await the defendant's denial of intent

on the witness stand before offering evidence of similar relevant acts."  *United States v.

Harrison*, 942 F.2d 751, 760 (10th Cir. 1991); *see also United States v. Hill*, 60 F.3d 672, 676

(10th Cir. 1995) (explaining that government's proffer of 404(b) evidence was "clearly relevant"

12

because knowledge was "an essential element of the charged offense" and defendant's not guilty

plea "put in issue every material ingredient of the crime charged, leaving the government its full

burden of proving every element beyond a reasonable doubt" (quotation cleaned up)).  In other

words, if the government intends to introduce 404(b) evidence for a permissible purpose, it may

do so in its case-in-chief unless the defendant has stipulated that he won't contest the purpose for

which the government intends to introduce the evidence.  *See United States v. Shumway*, 112

F.3d 1413, 1421 (10th Cir. 1997) ("By standing on his not guilty plea, and by failing to give

enforceable pretrial assurances he did not intend to dispute criminal intent, the government may

'include such extrinsic offense evidence as would be admissible if intent were actively

contested.'" (quoting *United States v. Franklin*, 704 F.2d 1183, 1188 (10th Cir. 1983))); *see also*

*United States v. Watson*, 766 F.3d 1219, 1244 (10th Cir. 2014) ("'Evidence offered under Rule

404(b) is *substantive evidence* against the accused, *i.e.*, it is part of the government's case offered

to prove his guilt beyond a reasonable doubt.'" (emphasis in original) (quotation cleaned up)

(quoting *United States v. Haslip*, 160 F.3d 649, 654 (10th Cir. 1998))).  In short, to the extent it's

otherwise admissible, the government may introduce 404(b) evidence during its case-in-chief.

The court takes up the admissibility question, next.

### 2.   Rule 404(b) Requirements

"Evidence of crimes, wrongs, or other acts is prohibited under the Federal Rules of

Evidence when used 'to prove a person's character in order to show that on a particular occasion

the person acted in accordance with the character.'" *United States v. Henthorn*, 864 F.3d 1241,

1247 (10th Cir. 2017) (quoting Fed. R. Evid. 404(b)(1)).  "Such evidence is permitted, however,

'for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge,

identity, absence of mistake, or lack of accident.'" *Id.* (quoting Fed. R. Evid. 404(b)(2)).  Our

Circuit uses the four-part test from *United States v. Huddleston*, 485 U.S. 681 (1988), to

determine whether a district court properly allowed evidence admitted under Rule 404(b):

> (1) The evidence must be offered for a *proper purpose* under Rule 404(b);
>
> (2) The evidence must be *relevant* under Rule 401;
>
> (3) The *probative value* of the evidence must not be substantially outweighed by its potential for unfair prejudice under Rule 403; and
>
> (4) The district court, upon request, must have *instructed the jury* pursuant to Rule 105 to consider the evidence only for the purpose for which it was admitted.

*Henthorn*, 864 F.3d at 1247–48 (emphases in original).

"The first *Huddleston* factor requires the evidence be offered for a proper purpose under

Rule 404(b)." *Id.* at 1248.  Rule 404(b)'s list is inclusive—that is, "illustrative, not

exhaustive"—and permits "admitting all evidence of other crimes or acts except that which tends

to prove *only* criminal disposition."  *United States v. Brooks*, 736 F.3d 921, 939 (10th Cir. 2013)

(emphasis in original).  Here, the government argues its evidence is relevant to prove absence of

mistake, intent, knowledge, and motive.  Doc. 51 at 36; Doc. 60 at 11.  And Mr. Castro doesn't

appear to contest that the government's 404(b) evidence is admissible for a proper purpose.  *See*

*generally* Doc. 57.

The second *Huddleston* factor assesses relevance.  *Henthorn*, 864 F.3d at 1249.  As with

relevance in general under Rule 401, the government need only clear a low bar to satisfy this

requirement.  *See Watson*, 766 F.3d at 1240 ("[P]rior acts that were quite remote to the crimes

charged have frequently been deemed by us and our sister circuits to be relevant if they were

sufficiently similar to those crimes.").

"'In the Rule 404(b) context, similar act evidence is relevant only if the jury can

reasonably conclude that the act occurred and that the defendant was the actor.'"  *Henthorn*, 864

F.3d at 1254 (brackets omitted) (quoting *Dowling v. United States*, 493 U.S. 342, 346 (1990)).

Once again, the government's briefing doesn't identify—at least not explicitly—which "other act" it intends to admit Exhibits 5 and 8 to prove. Unlike in the Rule 414 context, past acts involving child pornography needn't constitute crimes under the Rule 404(b) framework. *See* Fed. R. Evid. 404(b)(1), (2) (explaining that "any other crime, wrong or act" "may be admissible for" a non-propensity purpose). This means that the government—assuming it satisfies the other requirements—likely could admit Mr. Castro's concession that he previously received and possessed child pornography even if there isn't sufficient evidence for the jury to find that he did so knowingly.

Also, and again in contrast to the Rule 414 analysis, the government could seek to admit the interview itself as an "other act." Speech alone doesn't qualify under Rule 414's definition of "child molestation." *See id.* 414(d)(2). So, whatever Mr. Castro said in the 2019 interview didn't qualify as a crime involving "child molestation." *Id.* But that same speech may qualify as a relevant "other act" under Rule 404, as rulings from other courts support. For instance, courts routinely admit chat logs in child-pornography and enticement-of-a-minor cases under Rule 404, not Rule 414. *See, e.g.*, *United States v. Chambers*, 642 F.3d 588, 595 (7th Cir. 2011) (admitting chat with undercover agent "because the information regarding possible prior sexual act with a minor, as well as the sexually explicit nature of the chat" showed "motive and intent"); *United States v. Hite*, 916 F. Supp. 2d 110, 121 (D.D.C. 2013) ("[E]vidence the Defendant engaged in explicit discussions of sexual contact with minors, regardless of whether or not he followed through with plans to meet in person, is probative of his intent to entice or coerce the minors to engage in illicit sexual activity."). In short, while the same burden of proof applies to the government under both Rule 414 and Rule 404—adducing evidence sufficient for a jury to find by a preponderance of the evidence that the prior act occurred—the government enjoys wider

15

latitude for acts it can seek to admit under Rule 404.  Of course, the flip side of this coin is that

Rule 404(b) imposes more stringent limits on how the government may use the evidence than

does Rule 414.

"The third *Huddleston* factor requires the evidence's probative value not be substantially

outweighed by its potential for unfair prejudice."  *Henthorn*, 864 F.3d at 1255.  Excluding

evidence under this prong—which incorporates Rule 403—"'is an extraordinary remedy and

should be used sparingly.'"  *Id.* at 1256 (quoting *Brooks*, 736 F.3d at 940).  "'Evidence is

unfairly prejudicial if it makes a conviction more likely because it provokes an emotional

response in the jury or otherwise tends to affect adversely the jury's attitude toward the

defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged.'"  *Id.*

(emphasis in original) (quoting *United States v. MacKay*, 715 F.3d 807, 840 (10th Cir. 2013)).

Mr. Castro argues that admitting evidence from the 2019 interviews is unfairly

prejudicial.  Doc. 57 at 4–6.  He maintains that such evidence would confuse and inflame the

jury.  *See id.*  These arguments face an uphill battle.  Mr. Castro's prejudice arguments likely

will prove "self-defeating."  *Piette*, 45 F.4th at 1157.  That's so because the government

presumably will introduce evidence that Mr. Castro knowingly received and possessed child

pornography in 2021 in its case-in-chief.  So, any prejudice that Mr. Castro suffers from the

government introducing his 2019 statements "probably would have already happened."  *Id.*  Still,

the court will wait to rule these objections until the government identifies which portions of the

interview it seeks to admit, and for what purpose.

The "final *Huddleston* factor requires the district court, upon request, to instruct the jury

to consider the evidence only for the purpose for which it was admitted."  *Henthorn*, 864 F.3d at

1256; *see also* Fed. R. Evid. 105.  Should the court admit the proposed exhibits and should Mr.

Castro request such an instruction, the court will instruct the jury accordingly. The court also will seek Mr. Castro's input about when it should give such an instruction.

To summarize, it seems likely that the court will allow the government to introduce parts of Mr. Castro's 2019 interview under Rule 404(b). Before ruling definitively, however, the court asks the government to identify more clearly which parts of the interview it seeks to admit for what purpose.

### III.      Conclusion

The court offers just a few definitive rulings in this Order. It rules that evidence from the 2019 investigation isn't intrinsic to the crimes charged in the Second Superseding Indictment. The court defers ruling on whether this evidence from the 2019 investigation is admissible under either Rule 414 or Rule 404. And the court requests additional guidance from the parties on questions identified in this Order. So, the court denies the government's Motion to Admit Res Gestae Evidence (Doc. 51) in part and defers ruling it in part.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the government's 404(b) Notice and Motion to Admit Res Gestae Evidence, Evidence Pursuant to Rule 414 (Doc. 51) is denied in part. The unruled portion of the motion remains pending.

**IT IS SO ORDERED.**

**Dated this 20th day of May 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

17